and we'll hear from Mr. Lonza. Thank you, Your Honor. Good morning, Your Honors. I'm Joseph Lonza. I represent the appellate plaintiffs in this case, Joseph Woodruff, Scott Babjack, Erica Joe, who is in the courtroom today, and Mandy Katz. The facts briefly, my clients were fired because they refused on sincerely held religious beliefs to yield to Caris' demands that they get a COVID-19 vaccine. They sought injunctive relief in the district court and were denied on the basis that they had failed to demonstrate irreparable harm. And really, I think that's what this case is about today, whether there was irreparable harm. Judge Hogue summed it up very succinctly eleven days ago when in his concurrence denying United Airlines' motion for re-hearing in the Zambrano case, he said, what price to sell your soul? My clients were put to the hops and choice of either compromising their religious beliefs or being terminated. A choice between, as this court has said, their jobs and their jabs. How is the bargain Caris asked my clients to strike any different from the bargain United asked its employees to strike? Well, I'd suggest there are two possibilities. One of them is the Zambrano case, that it would be different if the plaintiffs had been terminated. And the other one is that I believe you conceded in the district court that if your clients had been reinstated, there would be no irreparable injury. The reinstatement is not irreparable failure, you know. Allow me to address both those points, Your Honor. In fact, Caris has made the argument that because our clients were fired, this case is factually different from the Zambrano case in that there was an adverse action. Being placed on indefinite leave is also an adverse employment action. But the real question, I think, is when does the irreparable harm actually occur? A district court in the Middle District of Florida recently answered that question on August 18th. That court says it occurs it ripens when the individual is subjected to that choice, when he's placed under threat of termination if he doesn't make the choice the employer wants. And that case was Colonial Financial Management Officer v. Austin. It's a case involving United States Marines. I have the citation if you'd like me to read it, or I can provide it to a clerk after the conclusion of oral argument. But that case, the judge held that it ripens at the moment that the person is put to the choice. And I think that's ... Right, but the threat passes when the termination occurs. Excuse me, Your Honor? The threat passes once the termination occurs. Doesn't the termination sort of render this a straight up Title VII case? In other words, how do you draw the line when injunctive relief obtains, as in Zambrano, and in the minds run of Title VII cases where the statute doesn't provide injunctive relief, right? I would ask the court to remember that when we sought our injunctive relief prior to termination, and that the injunction hearing was held prior to termination, and at that time they were under that threat, and so there was the harm that was demonstrated. Isn't it moot now? No, I disagree. First of all, they did seek reinstatement as part of their injunctive relief in case the injunction hearing occurred after December 1st. Second of all, if they were reinstated, which is relief this court can grant under Drew v. Liberty Mutual, they would be under the same threat again because the policy, to my knowledge, remains in effect. Yeah, so I'm not quite sure what this advances you because right now you have a Title VII claim for religious discrimination. At some point, has the EEOC issued right-to-sue letters? I believe the EEOC has issued a right-to-sue letter to Mr. Babjack. To my knowledge, none of my other clients have received their right-to-sue letters. Well, you know, that would be the normal course of action, and then he sues for damages under Title VII, and we had a case that came up to the Fifth Circuit at least twice, maybe three times, where a woman said she had religious activity planned over the Fourth of July weekend and couldn't do her IT work for the county, and it went up to the Supreme Court, and she ended up getting a huge verdict at trial. So why is that, so why do your clients even plausibly suffer irreparable harm at this point? Well, I do believe the irreparable harm still exists, Your Honor. I don't think the irreparable harm goes away. But as Judge Wilson says, they no longer face the problem about having to get, having to be vaccinated for this employer. If they're reinstated, they would face the same harm, and I think that they are entitled to a reinstatement under Drew v. Liberty Mutual County. Has the district court passed on the reinstatement request? I'm sorry, excuse me? Has the district court passed on the request for a reinstatement injunction? For a re- Reinstatement? You're asking, I'm sorry, you're asking for a reinstatement. As I understand it, there are two requests for relief, right? One is prevent the employer from terminating, and the second is request for reinstatement. The district court has not passed on the request for reinstatement. In its initial ruling, it focused solely on the irreparable harm and denied any injunctive relief. We've since asked the court to stay any further proceedings pending the outcome of this appeal. But if, as you say, the district court has not ruled on your request for an injunction, a PI, to reinstate your clients, then that issue is not before us on appeal. So the only thing before us, in other words, is the first request. Is that fair enough? The only issue before the court is whether we showed irreparable harm at the injunction hearing and whether or not this should be remanded for further consideration. I think we're talking past one another. Let me try to do this again. As I understand it, there are two different requests for PI that we're talking about here. One is please don't fire us. The second is, if you do fire us, please reinstate us. Is that a fair summary of the universe? I think you said the district court hasn't passed on the second one. The district court has not ruled on either reinstatement or prohibiting termination. It's just ruled that there was no irreparable harm, therefore we weren't entitled to it. I'm not sure that makes sense, because they said no irreparable harm with respect to the first request. They have not dealt with the second request at all. Is that fair enough? They said no irreparable injury, so you're not getting an injunction preventing your firing. But they have not addressed an injunction with respect to being reinstated because your clients hadn't been fired at that time, right? At that point, my clients had not been fired. Okay, so if the district court has never ruled on a request for a reinstatement injunction, how do we have jurisdiction to deal with an issue that the district court hasn't passed on? In other words, we're limited to the first issue. I'm not asking the court, this court, to make a ruling on reinstatement itself. I think that is properly, should be before the district court, if we prevail on the irreparable harm argument, and this court returns the case to the district court for reconsideration, because now... I think the implication of what Judge Ho is saying is that even if you do not prevail on irreparable harm vis-à-vis never having been terminated, that his idea is, I'm not sure what I think about it, but his idea is that you've still got your other basis for alleged irreparable harm, which is that you've been fired, now reinstate us. In other words, you could lose up here, but you've still got a case pending in the district court, right? I think I understand what the courts say, and if I understand it correctly, is that the court could conclude that while we didn't show irreparable harm to prevent firing, if we show irreparable harm... Or let's say you did. I think my point is neutral as to whether you had irreparable harm with respect to your first PI request. That's the debate that the court had in Sobrano. My point is you've never asked for the relief that you're really looking for now, which is reinstatement. Well, they actually did. I'm sorry, the district court hasn't passed on it. It wasn't right before. You can't ask for reinstatement when you haven't been fired. Don't look so sad. This is not... It just means you go back to district court. What you're sort of asking us to do is to give your clients a right under Title VII to be reinstated, and I will admit to you, I went back and looked at Drew, and I found out that the woman had in fact been fired, and then the Fifth Circuit said she had a right to be reinstated. So that may be possible, but if your long-term goal is to encourage employers to grant religious exemptions from this vaccine, then nothing would do that more efficiently and effectively than a very large damage verdict. Under Title VII? Under Title VII. I understand when we're talking about... Plus attorney's fees. And it's true that courts compensate for intangibles all the time, but this is a type of intangible that goes beyond, say, you know, the more generic intangibles like mental anguish. This, you know, I've yet to see the court that can come up with a formula that, you know, calculates the modern equivalent of 30 pieces of silver. This goes to the most fundamental beliefs in religion, and I don't see how you just come up with a money figure to compensate for what they were put through for 60 days, when they have to question every single day, do I stick to my faith or do I get an injection? Many people compromise their faith. That's Sombrano, but the difference between this case and that one is that every day they were on unpaid leave, they faced the same threat of coercion, and there were other things in the record also, as the opinion talks about, but once your clients were terminated, it strikes me that it's mooted. I mean, I guess another way to encapsulate the exchange we were just having with Judge Ho and Judge Jones is, is the irreparable injury that you argued pre-termination, in support of your request for injunctive relief, the same irreparable injury that you would argue in the alternative request for reinstatement? Does that make sense? In other words, are we talking about the same irreparable injury, or are we talking about distinct arguments between the two frames of relief? I think the injury is the same. When you look at, when you focus on indefinite leave versus termination, you're focusing on the defendant's actions, and as Judge Ho said in his dissent into Sombrano, what we call Sombrano II, the proper focus is on the plaintiff and what's the choice that the plaintiff is faced with. Yes, my plaintiffs were faced with those claims, with that dilemma, for only 60 days, but they were still faced with it, and it was still irreparable harm. But it's not so much the duration. It's the changed circumstance that they no longer face it, in terms of injunctive relief. As I said, I respectfully disagree. And again, I think if this were sent back down, while we would be looking at reinstatement, we would still be looking whether they were appropriately terminated for having to make that particular Hobson's choice. Did your clients ever consider arguing constructive discharge? I'm sorry, Your Honor? Did your clients ever consider arguing that they were constructively discharged by being put to this choice? I had not considered a constructive discharge argument, Your Honor. That might be one way of looking at it. I'm not sure how that would be affected by an actual discharge. In fact, as I said before, I think that when we look at this, we need to look at what they were faced with during that 60-day period, the choice that they were put to during that time frame. Let me suggest this, and perhaps you can address this on rebuttal, because I think we've been talking past each other. Let's stipulate, for purposes of conversation, that everything you've said about irreparable injury is correct. My point is we never reach that issue. Let me explain why. I would submit that this case has two different phases. The first phase was your theory about irreparable injury while you're on the job and you're afraid of being fired. That phase was addressed by the district court. The district court rejected the PI, rightly or wrongly. But that case is now over because your clients aren't under threat. They've actually been fired. We're now in phase two of the case where you want reinstatement. My concern is the district court has never addressed your request for relief at phase two of the case. If the district court has never addressed it, we have no jurisdiction to address it either. So perhaps you could address that on rebuttal. I do think the court has the authority to remand it for consideration on the second fact pattern for relief, the reinstatement. I think Drew, the decision in Drew gives this court. Well, just to be clear, I don't think we'd have to remand. If we affirmed, he would then be right back in district court for the rest of the case. My point is it's never been passed upon in district court. Well, you can think about it because your time has expired and we'll hear what Ms. Travers has to say. Do you want me to answer the question? Are you planning to answer it? I wasn't going to plan to answer it because I think that when the court made the finding of no irreparable harm, it effectively passed on both phases of the case, even though at that point we had not had a person who had been terminated. Okay. Thank you, Your Honors. All right, sir. Thank you. Ms. Travers. Thank you, Your Honor. Good morning. Sherry Travers with Little Mendelsohn on behalf of the defendants and the appellees. This appeal should be dismissed for three reasons. First, the appeal is moot. Second, there's a standing issue here. We have the wrong party standing before you this morning on the plaintiff's side. It should be the EEOC, and it's not. And third, there's no showing by the plaintiffs, the appellants, of irreparable harm in this matter. I'd like to take each of these three in turn. With regard to the mootness, we draw your court's attention to the fact that in the appellate's opening brief, in their statement of the issue on Roman numeral number nine, they said quite boldly, there is only one single issue before this court, and that is the issue of trying to prevent the termination. There was nothing about reinstatement mentioned whatsoever in that statement of the issue in the appellate's opening brief, and reinstatement really never became an issue for them until we filed our motion to dismiss, and then in responding to our motion to dismiss, it became an issue. I'm sorry. You're referring to their appellate brief, or you're talking about the MSJ paper, right, or the district court proceedings? I'm sorry. Are you referring to what they said here or in district court? No, here, Your Honor. So in their appellate brief, they state a single issue, and that single issue has to do with the threat and termination of their clients. This is Romanette 1X9. Yes. Yes. In addition to stating this very narrow issue, also in the briefing before the court. Your point is that claim is moot. Yes. Yes, it's moot because the only thing they asked for was to deal with the threat and termination, and as we've already talked about this morning, these individuals were terminated months ago. So there is no termination to be enjoined by the district court or otherwise. Secondly, in addition to that narrow issue that was presented in the briefing before this court, reinstatement was not briefed, and in particular, the differences between mandatory and prohibitory injunctions because what they would be seeking would be a mandatory injunction to try to get the reinstatement, and that was not briefed before this court. In addition to that, there's also – If I understand correctly, it was briefed in district court. It was just not passed upon, or is your point that it – It was raised in passing, but the focus, even at the district court, at the hearing, and I represented the defendants at that hearing, was to focus on the threat and termination because the hearing was held the day before these individuals were scheduled to be terminated, and that was the brunt of the proceeding. To use my earlier terminology, I think your theory is they're, for whatever reason, stuck on phase one of the case. They've never moved on to phase two, not even in their appellate briefing, and so we're just not here to talk about phase two. Yes, Your Honor, that's exactly it, and because these individuals were terminated so long ago, there isn't anything to enjoin, and the appeal is moot because nothing was sought with regard to the reinstatement that still, to your point, it's back still at the district court, and as opposing counsel mentioned, the district court case has stayed at this point in time. So it's our position that this appeal is not even properly in front of the judges today. With regard to standing, our second basis for denying the appeal, 42 U.S.C. 2000E is very precise. It says that the U.S. Equal Employment Opportunity Commission has the statutory authority. They have been empowered by Congress to seek preliminary injunctive relief on behalf of an aggrieved individual. Well, and you know very well that Drew is out there. Drew is out there, and it hasn't, I will say, it has not been explicitly overturned, but we would ask the court to take advisement of the plain text meaning of statutes and the statute. The only way we could do that is to go en banc as far as I'm concerned. All right, well, Your Honor, even if you, because of Drew, decide that that's not going to work, that argument, we would turn to our third argument because the mootness argument and the third argument on irreparable harm, they are independent basis for denying the appeal, and in that regard— Counsel, let me interrupt you just a little bit, but on ground one and kind of ground three, then Karis's position is that if we were simply just to dismiss the appeal, it's moot. We dismiss it. The next day, plaintiffs can go back to district court, and y'all can litigate over the question of irreparable harm and the alternative request for reinstatement. They would try to do that, yes. No, no, no, not just try. I guess what I'm asking is, is that, your view, is that a live claim that remains in the district court? It's not live at this point. The case was stayed, and we had the hearing, and they did not preserve error at that point and bring it up to this court. If they wanted to go back and reinstitute and file a new claim now and try to litigate over reinstatement, then that might be a different outcome. But they haven't done that, and there's nothing in the record before Your Honors this morning about getting to reinstatement. I'm not quite sure that's the case. In other words, if you're apparently conceding that had they been fired before the hearing, you're conceding that they had this alternate thing about reinstatement, and if a court grants a preliminary injunction on one issue in a case, that doesn't foreclose, that doesn't wipe out the whole case without an appeal because they only sought a preliminary injunction on the one issue. Right? I don't . . . maybe I'm forgetting something, but . . . Well, if they're going to go back and try to do that to district court, they had their day in front of the judge to establish the record, and that record isn't here before the court today. Well, they had plenty on irreparable, what they claim to be irreparable injury in the district court. But it seems to me the issues about surrounding termination are different. She only decided irreparable injury. She didn't decide the other fact issues pertinent to an injunction. And they didn't do anything in that regard? But what were they supposed to do? That's what I'm saying. Why did they have an obligation to argue every possible iteration of their case or bring up every possible iteration on appeal in order not to waive it, which I understand, believe is your argument? Because when they were terminated the day after, three of the plaintiffs were terminated the day after the TROPI hearing. Another one was terminated a couple months later when his medical exemption expired. If they had gone in afterwards, after they'd been terminated, then they could have asked the district court for an emergency. Not while on notice of appeal. Not while it's on appeal. But they hadn't filed their appeal yet at that point. Oh, so they file a motion in the district court, and then they file – that's bizarre. Why don't you assume that that's off the table? Because they didn't – What's your best case supporting that position, that having appealed the question about not being fired, they have forfeited the ability to argue reinstatement? What's your best case? They could have gone and done that the day after. Go find a case, and if you want to cite it in a 28-J, but otherwise you're just eating up your time. All right. So our last complaint has to do with irreparable harm. The plaintiffs in the record before you – Before we move on, I just want to clarify, because I may have been confused by that exchange. You're agreeing – I think you're agreeing, but please confirm – that plaintiffs have every right in district court, once the stay is lifted, to seek an injunction requesting reinstatement. They may or may not get it for any number of reasons, but they are able to make that claim. They haven't had a ruling on that by the district court yet. Well, we still take the position that Your Honor brought up Drew, but we still – You're going to contest it on the merits, but they are allowed to bring the claim. Right. You're agreeing to that. And the Title VII remedial scheme is very expressive. It allows for reinstatement if at the end of the day the individual prevails, right? Right, right. Then the court has full equitable power to order that reinstatement. You agree that the district court hasn't decided that issue. Indeed, it wasn't ripe at that time. Nobody had been fired at that time. So if this case – once this appeal is over one way or the other, you agree that they can make that claim in district court. Both sides will contest it on the merits accordingly. And then at that time, whoever loses can appeal. Yes, Your Honor. They could go back in now because they've been terminated, right? So now they can go in and seek reinstatement, and they could go back, and they could have done that months ago. Right. Because the TRO-PI hearing was on November 30th of 2021, and here we are now nine months later. Well, I don't quite – I still don't understand your argument about delay because it's been pending on appeal the entire – Yes, Your Honor, but the appeal wasn't filed until several weeks later, so there still was plenty of time. Okay, okay. I mean that's – you know, that has very little – no legal appeal and very little factual appeal under the circumstances here. So why don't you move on to irreparable harm? Could we do that? One last point if I could make on that. Sure. The plaintiffs could have gone to the EEOC and asked the EEOC to go in and seek emergency injunctive relief. And there's no evidence in this record that they ever did that. They asked the EEOC to do that. There's no record that the EEOC ever refused to do that. So there was something available to them in terms of emergency relief that they could have done. They could have asked the EEOC. Did you argue that in your brief? I'm sorry, Your Honor? Did you argue an EEOC exhaustion of reinstatement in your brief? Yes, Your Honor. Okay. And so the last point with regard to irreparable harm is this is the case that in Sobrano this court warned about. In the Sobrano decision when the court talked about irreparable harm, it talked about the ongoing coercion. It talked about past acts not being able to form the basis for irreparable harm. And, in fact, plaintiffs conceded that in their appellate brief, that this would be a different situation if the plaintiffs had already been fired. So in this case, these individuals were terminated. There is no ongoing coercion. There is no threat, no power that the employer has. The employer hasn't had any power over these individuals like the United Airlines Sobrano case. And so absent that ongoing coercion, which very importantly in the Sobrano case the court put that in italics. They wanted it to stand out. And so it talks about there has to be that level of ongoing coercion in order to rise to the level of irreparable injury. And just recently in the last two months, since our briefing was all completed in this case, the Seventh Circuit in the Ascension Health Care case, and I can give you that slide, it's 37F4, 1321. It was decided on June 23rd of 22 by the Seventh Circuit. The Seventh Circuit talked about Sobrano in that case. They talked about the reasoning of it. They talked about the holding of it. And they said exactly what this court has previously said, that in the Ascension case the plaintiff had been fired. They said this is like Sobrano, that this is not one of those extraordinary situations where we should consider exercising extraordinary relief. This should go through the normal remedial process. There's not ongoing coercion. There's not ongoing harm. This is a past act that's already occurred, and Title VII has the mechanism by which that harm can be remedied. But they don't have Drew. I'm sorry? The Seventh Circuit does not have a decision comparable to Drew, correct? Correct. Okay. So for these three reasons, Your Honor, mootness, number one. Number two, the standing argument that the EEOC is the party that should be here if anybody can seek preliminary emergency injunctive relief. It should be the EEOC. They're not here today. And third, based on the record before this court, the plaintiff's appellants have not proven irreparable harm, including under the Sobrano decision. Do Your Honors have any questions for me? Well, let me just, I mean, you do acknowledge, don't you, that there is a lot of factual dispute about the extent to which these plaintiffs would have had to receive vaccinations? There are factual issues in the case, yes. Okay. I mean, you weren't just doing it to comply with federal regulation. Is that right? That's correct, Your Honor, because in addition to when the federal regulation started coming out, the company, given the serious type of patients they deal with, these stage four critically ill cancer patients. Yeah, but the issue is whether these, the extent to which these individuals were exposed to stage four cancer patients. Yes, Your Honor, and the company made a business decision that given the type of work it does, the patients for whom it cares for, in several situations where these individuals are interacting with these sick cancer patients, that they had their policy requiring mandatory vaccinations. Has the company modified any of its policies in this regard in light of the changes in our knowledge about vaccinations and about other precautionary measures and the waning of the virus and so on? The company has not changed the vaccine mandate policy at this time, Your Honor. Okay. Anything else, Your Honors? No, thank you. Thank you. Okay, Mr. Lanza. Apologies, Your Honor. With regarding to the safety measures, I believe that counsel mentioned, I should point out our clients don't have any patient-facing responsibilities. We never come into contact with the patients. So any fear of the transmission of the virus to a cancer patient is an indirect transfer from my unvaccinated clients to a worker in one of the clinics and then to a patient. And when you think about that, it breaks down. Because when those workers get off work, they go home. They go about their daily lives. They go to the theater, to the store, sporting events, their kids' schools, family gatherings, where they're exposed to hundreds and thousands of people, both vaccinated and unvaccinated. So how do my four plaintiffs shift the statistics to any appreciable degree that would increase the risk to cancer patients to such a degree that they have to be vaccinated? I'd also note that the Center for Medicare and Medicaid Services, while it does require vaccination for the employees of those who provide Medicare services, that's limited to a specific listing of about 17 different types of entities. CARES does not fall into any of those categories. And, in fact, they admitted that to Mr. Babjack in an email when they were corresponding back and forth about Medicare's requirement for vaccination. Even the clients of CARES, and specifically University of Texas Southwestern Medical Center, in its contract with CARES, which was attached as an exhibit, acknowledged that they would accept a proof of appropriate exemptions in lieu of vaccination for CARES workers. So they haven't even shown that their customers and their clients would refuse to do business with them if all their employees were not vaccinated. So I don't think any of those arguments hold any weight there. We did request reinstatement in our application for injunctive relief. It's in the paragraph immediately preceding the paragraph that requests that they not be fired. It was also requested in our reply to their response to our application for injunctive relief. So it was requested and it is preserved, at least to the extent that it was required in order for it to appear. But you agree that the requisite fact findings weren't made up. There are no requisite. We can't give that relief at this court because we don't have the fact findings. It's not in the record? Well, we would have, because the district court didn't rule on it, you'd be asking us to rule on whether you have a substantial likelihood of success on appeal. And that is not, certainly the religious claim is exceedingly important, but so is also the idea that this is a medical environment, that they claim that your clients would be exposed to patients. And you deny that they would be exposed. Now, I may have formulated an opinion reading the briefs, but that is not sufficient for a fact finding. And wouldn't you agree that, you know, under Title VII as a business necessity excuse, and it is possible that in certain care circumstances, unless you're going to prove, you know, prove that vaccines are not meaningful at this point in time, which would be a big undertaking, that there probably are circumstances where certain medical personnel need to at least have had some kind of vaccine in order to treat certain kinds of patients? I think that for medical personnel who do have contact with patients, vaccination is important. That's a disputed point. But our clients don't have that contact. Well, I know, but that's not undisputed, is it? So, vaccination for them, to me, doesn't make sense. Okay. Thank you, sir. Thank you, Your Honor. All right. We'll go on to the third case of the morning.